No. 00-285

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 70N

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

JON T. LeBEAU,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Brad L. Arndorfer, Arndorfer Law Firm, Billings, Montana

        For Respondent:

            Hon. Joseph P. Mazurek, Attorney General; Pamela P. Collins,
Assistant Attorney General, Helena, Montana

            Fred R. Van Valkenburg, Missoula County Attorney, Missoula,
Montana

                Submitted on Briefs:  December 28, 2000

                         Decided:  April 11, 2002

Filed:

_____
                         Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Jon T. LeBeau (LeBeau) appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, on its order revoking the suspended portions of his sentences on two counts of burglary and one count of forgery. We affirm.

¶3 The sole issue on appeal is whether the District Court had jurisdiction to revoke LeBeau's suspended sentences.

BACKGROUND

¶4 On April 18, 1996, the State of Montana (State) charged LeBeau by information with two counts of felony burglary and one count of felony forgery. LeBeau subsequently pleaded guilty to all three counts pursuant to a plea agreement. The District Court sentenced him to 20 years with the Montana Department of Corrections on each count, with 10 years of each sentence suspended, the sentences to run concurrently. LeBeau was then transported to the Montana State Prison (MSP) to begin serving the nonsuspended portion of his sentences.

¶5 In July of 1999, while incarcerated at the MSP, LeBeau was convicted of attempted aggravated assault for spitting on a correctional officer and shouting that he intended to give the correctional officer AIDS. The State subsequently petitioned the District Court to revoke LeBeau's suspended sentences on the burglary and forgery convictions, asserting that LeBeau's conviction for

2

attempted aggravated assault violated the court-imposed condition for those sentences that required him to comply with all state laws and conduct himself as a good citizen. LeBeau appeared at the hearing on the State's petition with counsel and admitted the allegation in the revocation petition that he had been convicted of attempted aggravated assault. Based on this admission, the District Court determined LeBeau violated the condition that he comply with all state laws and revoked the three 10-year suspended sentences. It then sentenced LeBeau to three concurrent 10-year sentences in the MSP and entered judgment on the revocation and sentencing. LeBeau appeals.

DISCUSSION

¶6 Did the District Court have jurisdiction to revoke LeBeau's suspended sentences?

¶7 Section 46-18-203(2), MCA, provides that a petition to revoke a sentence "must be filed with the sentencing court during the period of suspension or deferral." LeBeau asserts that, because he was incarcerated in the MSP and not yet serving the suspended portions of his sentences at the time he committed the offense on which the State based its revocation petition, the District Court lacked jurisdiction to revoke his suspended sentences. In response, the State contends as a threshold matter that LeBeau waived his right to appeal this issue by failing to raise it in the District Court during the revocation proceedings.

¶8 Our longstanding rule is that we will not address issues which are raised for the first time on appeal. See, e.g., State v. Weaselboy, 1999 MT 274, ¶ 16, 296 Mont. 503, ¶ 16, 989 P.2d 836, ¶ 16; State v. Stewart, 2000 MT 379, ¶ 30, 303 Mont. 507, ¶ 30, 16 P.3d 391, ¶ 30. LeBeau concedes that he did not raise this issue in the District Court when he admitted to the allegation of the revocation petition. He asserts, however, that this is a matter of subject matter jurisdiction which may be raised at any time pursuant to our statement in State v. Akers (1938), 106

3

Mont. 43, 57, 74 P.2d 1138, 1145, that the issue of whether a court lacks subject matter jurisdiction over a case is never waived and may be raised at any point in the proceedings. Thus, LeBeau contends he may raise this issue on appeal notwithstanding his failure to raise it below. We disagree.

¶9    Akers is distinguishable from the present case, in part, in that the defendant there raised the jurisdictional issue during the proceedings in the trial court and that court denied the jurisdictional challenge. Akers, 106 Mont. at 57-58, 74 P.2d at 1145-46. More importantly, however, Akers predated the Montana Legislature's enactment of § 46-20-701, MCA. Section 46-20-701(2), MCA, permits a claim alleging a jurisdictional error to be noticed on appeal, even where not raised in the trial court, if the party asserting the error establishes both prejudice and the existence of one of the circumstances set forth in subsections (a) through (c). LeBeau does not address this statute, but it is clear from the record that none of the three circumstances set forth in § 46-20-701(2)(a)-(c), MCA, exists here. Moreover, since LeBeau admitted the allegation of the revocation petition, no prejudice exists on this record with regard to the actual revocation of his suspended sentences. Therefore, LeBeau waived his right to raise the jurisdictional issue on appeal.

¶10    In any event, however, LeBeau also acknowledges our previous decisions holding that § 46-18-203, MCA, does not prohibit revocation of a suspended sentence before the defendant actually begins serving the suspended sentence. See Christofferson v. State (1995), 272 Mont. 518, 521, 901 P.2d 588, 589; State v. Sullivan (1982), 197 Mont. 395, 401, 642 P.2d 1008, 1011. He contends that those cases are distinguishable on the facts because, although those defendants had not begun serving the suspended portions of their sentences when the sentences were revoked, both were on parole at the time. He further contends that the policy considerations underlying our decisions in

4

Christofferson and Sullivan are not the same when a person is still incarcerated, rather than on parole, because a parolee has been released into the community and has proven that he or she is incapable of abiding by the conditions of the release. On the other hand, according to LeBeau, "[i]nmates have totally different problems and adjustments to incarceration than someone being allowed to be out under supervision. They cannot show lack of ability to live in society, because they are not in society."

¶11    In Sullivan, we based our holding on

> the strong public policy that if a person convicted of a crime, and granted a period of probation as part of the sentence, should commit offenses of such nature as to demonstrate to the court that he is unworthy of probation, the court has the power to revoke or change the order of probation, both during the period of probation, and before the period of probation commences.

Sullivan, 197 Mont. at 401, 642 P.2d at 1011. This public policy is not qualified by whether the defendant is on parole or incarcerated at the time the conduct underlying the revocation is committed.

¶12    Moreover, LeBeau's argument appears to be premised on a belief that the sole purpose of incarceration is punishment and that it does not relate to rehabilitation. It is Montana's correctional and sentencing policy, however, that any sentence have multiple purposes: punishment, public protection, reparation and rehabilitation. See § 46-18-101(2), MCA. Thus, even a sentence requiring a period of incarceration has an underlying purpose of rehabilitating the offender so he or she may be reintegrated into the community. If an inmate cannot abide by the rules and conditions while in the regulated environment of the MSP, it is a strong indication that the inmate will not act appropriately in the more liberal situation of release into the community on either parole or probation under a suspended sentence. The policy considerations outlined in Sullivan are equally

5

applicable to a defendant who is incarcerated as to a parolee.

¶13    Furthermore, in State v. Vallier, 2000 MT 225, 301 Mont. 228, 8 P.3d 112, we addressed a situation identical to that presented before us.  There, we held that a district court did not abuse its discretion in revoking a suspended sentence before it began and where the defendant was incarcerated at the time of the revocation.  Vallier, ¶ 16.  In that case, we stated that the revocation was appropriate because the defendant had shown--before he was released from incarceration--that he was incapable of complying with the terms of his suspended sentence.  Vallier, ¶¶ 13-16.

¶14    Finally, LeBeau does not challenge the District Court's revocation on any basis other than subject matter jurisdiction and, in light of his admitting the allegation of the petition that he had been convicted of an offense, he could not do so successfully on this record.

¶15    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART

6